**PATRICIA B. and Iva F. by their next friend, Robert Nelkin, Plaintiffs,**

v.

**Juanita JONES, Julian Hampson and Shirley Sutkovich, Defendants.**

**Civ. A. No. 77–1221.**

United States District Court, W. D. Pennsylvania.

June 22, 1978.

treatment of the mentally retarded located in Cannonsburg, Pennsylvania. Their complaint alleges that on July 30, 1977, defendants Jones and Hampson, two mental retardation aides employed at the Center, physically dragged plaintiffs across the floor of a particular building for a distance of approximately 35 feet resulting in physical injury to plaintiffs. Plaintiffs contend that these two defendants conspired to and did deprive plaintiffs of their First, Eighth and Fourteenth Amendment rights in violation of 42 U.S.C. §§ 1985 and 1983. Plaintiffs further allege that defendant Sutkovich, a nurse employed at Western Center, together with the other two defendants, failed to exercise reasonable diligence to prevent the alleged assault in violation of 42 U.S.C. § 1986. Finally, plaintiffs set forth two state claims, for assault and battery against Jones and Hampson and for gross negligence against all three defendants. The defendants filed a motion to dismiss the complaint pursuant to FRCP 12(b) [1] alleging lack of subject matter jurisdiction and failure to state a claim. Although there is no clear precedent from the Third Circuit or the United States Supreme Court on the important and unresolved issue presented herein, the Court has determined that defendants' motion should be granted.

Essentially, this case poses the question whether defendants' alleged conduct constitutes a violation of the plaintiffs' Eighth Amendment [2] right to be free from cruel and unusual punishment such that plaintiffs can assert a cause of action under 42 U.S.C. § 1983.[3] The inherent difficulty with such an issue, invoking as it does the rather fluid and imprecise standards generally applied to a determination of the meaning and scope of the cruel and unusual

Robert S. Englesberg, Asst. Atty. Gen., Dept. of Justice, Pittsburgh, Pa., for plaintiffs.

Arnold M. Epstein, Neighborhood Legal Services Association, Philadelphia, Pa., David H. Trushel, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

KNOX, District Judge.

Plaintiffs are two mentally disabled individuals who reside at Western Center, a state operated facility for the care and

---

1. At oral argument, defendants' original counsel informed the Court that he was representing defendants Jones and Hampson only. Since the motion itself bears the names of and was filed on behalf of all three defendants, however, this memorandum and order will apply to all the defendants.

2. The cruel and unusual punishment clause, of course, has been held to be applicable to the states through the Fourteenth Amendment.

3. The Court holds that defendants herein acted under color of state law thereby satisfying the first element for a cause of action under 1983. This memorandum deals with the second element of 1983 only, the deprivation of some Constitutional right, privilege or immunity.

punishment clause in a particular setting, is compounded by the status of the plaintiffs in this case as voluntarily committed retarded citizens.

Traditionally, the proscriptions contained in the Eighth Amendment have been limited in application to convicted criminals. As recently as 1977, the Supreme Court reaffirmed this narrow historical reach of the cruel and unusual punishment clause. In *Ingraham v. Wright,* 430 U.S. 651, 663, 97 S.Ct. 1401, 1408, 51 L.Ed.2d 711, 725 (1977), the Court stated:

> The Eighth Amendment provides: 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' Bail, fines, and punishment have been associated with the criminal process, and by subjecting the three to parallel limitations the text of the Amendment suggests an intention to limit the power of those entrusted with the criminal-law function of government. An examination of the history of the Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes.

In *Ingraham,* the Court adhered to its prior reasoning and held that the Eighth Amendment did not apply to the disciplinary paddling of school children. In a footnote, however, the Court stated, "We have no occasion in this case . . . to consider whether or under what circumstances persons *involuntarily* confined in mental or juvenile institutions can claim the protection of the Eighth Amendment." 430 U.S. at 669, 97 S.Ct. at 1411, 51 L.Ed.2d at 729, emphasis added. Further, at least one Circuit, in a case decided before *Ingraham,* has extended the scope of the Eighth Amend-

ment's protection beyond the traditional boundary of the convicted criminal. See *Wheeler v. Glass,* 473 F.2d 983 (7th Cir. 1973) dealing with mentally retarded youths. In addition, the Third Circuit has held that pretrial detainees are proper subjects of the cruel and unusual punishment clause. *Rhem v. Malcolm,* 507 F.2d 333 (2d Cir. 1974) (cited with approval by the Third Circuit in *Tyrrell v. Speaker,* 535 F.2d 823 (3d Cir. 1976)). See also *Inmates v. Pierce,* 442 F.2d 1368 (W.D.Pa.1978, Cohill, J.). Thus, this Court is left with varying interpretations of the proper scope of the Eighth Amendment and little clear guidance in this case involving *voluntarily* committed mentally retarded adults.

On the one hand, it can be argued that these individuals, who are confined for care and treatment rather than for criminal punishment, should be accorded at least the same degree of protection as prisoners, *New York State Association for Retarded Children, Inc. v. Rockefeller,* 357 F.Supp. 752 (E.D.N.Y.1973). On the other hand, as reiterated in *Ingraham,* the Eighth Amendment historically has been limited to convicted criminals on the theory that because they are confined involuntarily in institutions which necessitate limited public access, they require a greater degree of protection than persons in "open" environments who have the resources and assistance of family and friends. Plaintiffs assert that their situation is more analogous to the closed prison setting than to the open school surroundings emphasized by the Court in *Ingraham.*[4]

■ The Court need not determine this troublesome and unsettled question, however, since even if we were to assume that these plaintiffs are entitled to the protec-

---

**4.** It should be noted here that the Third Circuit has held that in order for a plaintiff to bring his claim within the scope of the Eighth Amendment, it is not necessary for him to prove that the defendants intended to "punish" him. As stated in *Howell v. Cataldi,* 464 F.2d 272, 281 (3d Cir. 1972), "Although [the Eighth] Amendment proscribes the infliction of cruel and unusual 'punishment,' clearly it was [the defendants'] conduct which pierced the constitutional

shield, not their motive. All that is required is proof that the conduct was intentional. There is no requirement of proof of a further objective toward which the conduct is directed." In paragraphs 8, 12 and 13 of their complaint herein, plaintiffs allege intentional conduct on the part of all three defendants, thereby precluding the necessity for further discussion of the nature and extent of the "punishment" allegedly inflicted.

tions afforded by the Eighth Amendment, the conduct alleged in this case does not give rise to a cause of action under either of the two most commonly used Eighth Amendment standards. Some cases (see *Sheffey v. Greer,* 391 F.Supp. 1044 (E.D.Ill. 1975)) have employed a "shocking or brutal" standard to determine if the conduct alleged violated the Eighth Amendment. Other cases, including those decided recently by this Circuit, have applied a less restrictive standard which "draws its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles,* 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958). Under this latter standard, which we will apply in this case, prohibited conduct under the Eighth Amendment is that which "violates standards of decency more or less universally accepted," *State of La. ex rel. Francis v. Resweber,* 329 U.S. 459, 469, 67 S.Ct. 374, 379, 91 L.Ed. 422 (1947) and "exceeds that [force] which is reasonable and necessary under the circumstances," *Howell v. Cataldi, supra* at 282.

 Although the extent of the injuries received by plaintiffs is not the sole, or even a major, determinant of the constitutionality of the alleged conduct, the Supreme Court has held that there is "a de minimis level of imposition with which the Constitution is not concerned." *Ingraham,* 430 U.S. at 674, 97 S.Ct. at 1414, 51 L.Ed.2d at 732. Further, the conduct in this case must be examined in the context in which it is alleged to have occurred, a state operated institution for the mentally retarded. Although the Court does not condone the exercise of force in such an environment, it is important to bear in mind that in this type of an institution some degree of order must be maintained for the protection and well-being of the residents as well as the staff. In addition, in this Circuit, "a tort committed by a state official acting under color of law is not, in and of itself, sufficient to show an invasion of a person's right under the [Civil Rights] Act." *Kent v. Prasse,* 385 F.2d 406 (3d Cir. 1967). The Third Circuit has enforced this doctrine with respect to an alleged assault and battery specifically.

In *Smith v. Spina,* 477 F.2d 1140 (3d Cir. 1973), plaintiff was stopped by state police officers for an alleged traffic offense. Subsequently, he was taken into custody at which time he sustained injuries. According to the Circuit, "appellant's counsel proceeded under fundamental misapprehensions that § 1983 subsumed these state tort causes of action." 477 F.2d at 1143. Finally, although the Seventh Circuit has held that 20 separate beatings of an inmate in a state hospital resulting in his death gave rise to a 1983 cause of action, that Court emphasized that the complaint alleged more than an "isolated incident," contrary to the allegations in this case. *Spence v. Staras,* 507 F.2d 554 (7th Cir. 1974). Further, *Spence* was brought under the due process clause of the Fourteenth Amendment rather than the cruel and unusual punishment clause. Cf. *Curtis v. Everette,* 489 F.2d 516 (3d Cir. 1973) in which the Third Circuit held that a prisoner stated a cause of action under 1983 when he alleged that prison personnel deprived him of his civil rights by failing to disarm a fellow prisoner after he had, in their presence, attacked plaintiff with a knife causing loss of sight in his right eye. Although involving an "isolated incident," this case was decided on the basis of the Fourteenth Amendment's due process clause, the Court stating that "it is not necessary to discuss the possible application . . . of the language concerning cruel and unusual punishment." 489 F.2d at 519.

 With these four considerations in mind, that a de minimis level of imposition exists; that some degree of order must be maintained in a mental institution; that in this Circuit a tort, including assault and battery, committed by a state official, does not give rise to a 1983 cause of action; and that an allegation of more than an isolated instance of misconduct is necessary to invoke the Eighth Amendment under the Civil Rights Act, the Court holds that the action of dragging plaintiffs across a floor for a distance of 35 feet does not justify the application of the Eighth Amendment. Taking the allegations in the complaint as true, as we must when considering a motion to dismiss, the facts presented do not set

forth a cause of action upon which plaintiffs could possibly prevail.

The conduct in this case takes the form of a simple assault and battery. Consequently, any relief to which plaintiffs may be entitled must be obtained through a proceeding in state court under the averments contained in Counts 4 and 5 of plaintiffs' complaint herein. Although the Court is sympathetic to the plight of all those who are compelled, voluntarily or otherwise, to seek treatment and care in a perhaps inadequate or at least inhospitable state operated mental health facility, we cannot fashion a constitutional remedy where none exists. The Court is not prepared to say that every simple assault and battery, not outraging our sense of decency, occurring in such institutions will give rise to a cause of action for a civil rights violation.

Inasmuch as we have concluded that there is no federal cause of action, we will not assume pendent jurisdiction over the state claims.

For the foregoing reasons, the defendants' motion to dismiss will be granted and plaintiffs' action dismissed. An appropriate order will be entered.