Anthony BANKS, an individual, Plaintiff,

v.

DEPARTMENT OF MOTOR VEHICLES, FOR the State of CALIFORNIA, a public entity; City of Los Angeles, a public entity; William J. Bratton, being sued in his individual and official capacity as Chief of Police for the City of Los Angeles; James A. Rubert, being sued in his individual and official capacity as a Captain for the Los Angeles Police Department; Officers Chapman, Serial no. 35964 and Fukui, Serial no. 22295, being sued in their individual and official capacity as Police Officers of the Los Angeles Police Department; Viertel's Automotive Services, being sued as the official towing agency for the Los Angeles Police Department and the City of Los Angeles; Bob Jones, being sued in his individual and official capacity as the General Manager of Viertel's Automotive Services; Carolyn Lucas, being sued in her individual and official capacity as a Driver Safety Manager 1, for the Department of Motor Vehicles, each and every individual being sued jointly and severally under their individual, official, personal, private and professional capacities, et al., Does 1 to 50, inclusive, Defendants.

No. CV 05–2037–JVS(RC).

United States District Court, C.D. California.

Feb. 17, 2006.

**1188**

The plaintiff is appearing pro se.

Y. Christopher Nagakawa, Deputy Attorney General, Office of Attorney General of California, Los Angeles, CA, for Defendants Department of Motor Vehicles and Carolyn Lucas.

Wendy C. Shapero, Deputy City Attorney, Los Angeles City Attorney's Office, City Hall East, Los Angeles, CA, for defendant City of Los Angeles.

Eugene F. West and Ian Corzine, attorneys-at-law with the firm West & Miyamoto, Camarillo, CA, for defendants Viertel's Automotive Services and Bob Jones.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

SELNA, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Court finds the first, second, third and eighth causes of action fail to state a claim upon which relief can be granted, and Judgment shall be entered dismissing those claims with prejudice; and (3) the Court finds the fourth, fifth, sixth and seventh causes of action are state law claims over which the Court declines to retain jurisdiction, and Judgment shall be entered dismissing those claims without prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

## JUDGMENT

Pursuant to the Order of the Court adopting the findings, conclusions, and recommendations of United States Magistrate Judge Rosalyn M. Chapman,

IT IS ADJUDGED that Judgment shall be entered dismissing with prejudice the first, second, third and eighth causes of action for failing to state a claim upon which relief can be granted and dismissing without prejudice the supplemental state law claims set forth in the fourth, fifth, sixth and seventh causes of action.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable James V. Selna, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 01–13 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On July 14, 2005, defendants City of Los Angeles ("City") and William J. Bratton filed a motion to dismiss plaintiff's complaint, which defendants Chapman and Fukui later joined in; on July 26, 2005, defendants California Department of Motor Vehicles ("DMV") and Carolyn Lucas filed a motion to dismiss the complaint or, alternatively, for a more definite statement; and on August 9, 2005, defendants Viertel's Automotive Services and Bob Jones filed separate motions to dismiss the complaint and motions to strike the punitive damages from the complaint. On August 29, 2005, plaintiff Anthony Banks filed his opposition to the motion to dismiss filed by defendants City and Bratton, as well as a motion to strike the request for joinder of defendants Chapman and Fukui; on September 23, 2005, plaintiff filed an opposition to the motion to dismiss or for a more definite statement filed by defendants DMV and Lucas; and on November 3, 2005, plaintiff belatedly filed an opposition or motion to strike the motions to dismiss and strike filed by defendants Viertel's and Jones.[1] On September 2, 2005, defendants Chapman and Fukui filed an opposition to plaintiff's motion to strike their request for joinder, and plaintiff filed a reply on September 28, 2005. On November 22, 2005, defendants Viertel's and Jones filed an opposition to plaintiff filing a belated motion to strike.[2]

### II

On March 4, 2005, in the United States District Court for the Eastern District of California, plaintiff Anthony Banks, a non-prisoner proceeding pro se, filed a verified complaint against defendants DMV and DMV Safety Manager Carolyn Lucas (collectively "DMV defendants"), City, William J. Bratton, Chief of the Los Angeles Police Department ("LAPD"), LAPD Captain James A. Rubert, LAPD Officers Chapman and Fukui (collectively "LAPD defendants"), Viertel's Automotive Services ("Viertel's") and Viertel's general manager Bob Jones (collectively "Viertel defendants"), and Does 1 through 10,[3] in their official and individual capacities, claiming defendants violated his federal and state rights. On March 10, 2005, the action was transferred to this district court. In his complaint, plaintiff sets forth eight causes of action: (1) the first cause of action against LAPD defendants for violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, et seq; (2) the second cause of action against LAPD defendants and Viertel defendants for violating the Fourth Amendment; (3) the third cause of action against DMV defendants under various constitutional and statutory provisions; (4) the fourth cause of action for "harassment" against DMV defendants, defendant Jones and LAPD defendants; (5) the fifth cause of action for conversion against LAPD defendants and defendant Jones; (6) the sixth cause of action for unjust enrichment against LAPD defendants and defendant Jones; (7) the seventh cause of action for gross negligence against defendants DMV and City; and (8) the eighth cause of action for a temporary restraining order

---

1. The Court ordered this document to be filed.

2. The Court denies plaintiff's motion to strike the request for joinder filed by defendants Chapman and Fukui and also denies plaintiff's motions to dismiss or strike the motions to dismiss the complaint and strike punitive damages filed by defendants Viertel's and Jones.

3. Although plaintiff has named 50 Doe defendants, Local Rule 19–1 allows for no more than 10 Doe or fictitiously named parties.

and preliminary and permanent injunctive relief and declaratory relief against DMV defendants. Plaintiff also seeks damages. Complaint at 13:20–14:6 and ¶ 22.

In his complaint and attached documents,[4] plaintiff alleges the following facts to support his claims: On or about July 24, 2003, defendant Lucas "wilfully and unlawfully" sent to plaintiff at the "wrong" address, 901 E. 10th Street, Long Beach, CA 90813, a notice from DMV informing him that, as of August 23, 2003, his driving privileges were suspended because he failed to appear on a traffic ticket issued February 17, 2003, Complaint, ¶ 19, Exhs. K, P, and defendant Jones obtained the "wrong" address from an LAPD accident report dated February 8, 2003. Complaint, ¶ 19. Plaintiff's current address was, and continues to be, 6122 Eileen Ave., Los Angeles, CA 90043. Complaint, ¶ 19, Exhs. L–M. On March 5, 2004, defendants Chapman and Fukui stopped plaintiff while he was driving because his vehicle did not have a front license plate, discovered plaintiff was driving with a suspended license, and issued plaintiff a ticket for violating California Vehicle Code ("Veh. C.") §§ 5200 and 14601.1(a). Complaint, ¶¶ 16–19, Exhs. A, G, K. Then defendants Chapman and Fukui, acting in concert with Viertel defendants, seized, towed and impounded plaintiff's vehicle. Complaint, ¶¶ 16, 18, Exhs. A, G–H. Defendant Viertel would not allow plaintiff to recover his vehicle without paying $423.00, which amount JMG Auto Sales, the vehicle's legal owner, paid to repossess the vehicle on March 16, 2004. Complaint, ¶ 16, Exh. H, O. On September 16, 2004, plaintiff was found not guilty of violating Veh. C. § 14601.1(a), and the charge of violating Veh. C. § 5200 was dismissed. Complaint, ¶ 16, Exh. B.

Plaintiff claims the loss of his vehicle prevented him from operating his messenger service and did not allow him to obtain employment as a professional driver. Complaint, ¶¶ 17–18. Furthermore, plaintiff claims that by towing his vehicle, defendants DMV and City "display[ed] a pattern of Racketeering activity involving conversion, extortion, grand theft and car jacking." Complaint, ¶ 18. Plaintiff also claims defendants DMV and City have a policy, practice, or custom of allowing their employees to engage in racial discrimination and racial profiling, and defendants Chapman and Fukui stopped plaintiff and cited him for Vehicle Code violations "because he is a Black male[.]" Complaint, ¶ 18.

## DISCUSSION

### III

Rule 12(b)(1) authorizes a court to dismiss a complaint for lack of subject matter jurisdiction. "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint [on its face] or may be made as a 'speaking

[4.] "If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n. 1 (9th Cir.1991) (citations and internal punctuation omitted); *see also Cooper v. Pickett*, 137 F.3d 616, 622–23 (9th Cir.1997) (noting material properly submitted as part of complaint may be considered on motion to dismiss). Since neither party challenges the authenticity of the declarations attached to the complaint as Exhibits G and H, and since plaintiff specifically incorporates Exhibit H into his complaint, *see* Complaint, ¶ 16, the Court will consider these declarations in assessing defendants' motions to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.), *cert. denied*, 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994), *overruled on other grounds by, Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002).

motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Publ'g Co. v. General Tel. & Electronics,* 594 F.2d 730, 733 (9th Cir.1979); *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000). When considering a Rule 12(b)(1) motion that attacks the complaint on its face, the court must view the allegations of the complaint as true. *Federal Deposit Ins. Corp. v. Nichols,* 885 F.2d 633, 636 (9th Cir. 1989); *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987).

■ Here, defendant Jones contends this Court lacks subject matter jurisdiction over him because no diversity jurisdiction exists and plaintiff's complaint fails to state a claim against him under the Constitution or federal law. The Court disagrees. Construing plaintiff's complaint broadly, plaintiff alleges defendant Jones participated in a violation of plaintiff's Fourth Amendment rights. *See,* e.g., Complaint, ¶ 16. Therefore, this Court has subject matter jurisdiction over defendant Jones, 28 U.S.C. § 1331, and his motion for dismissal under Rule 12(b)(1) should be denied.

**IV**

A motion to dismiss for failure to state a claim under Rule 12(b) (6) should be granted when it is clear plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989); *Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Hearns v. Terhune,* 413 F.3d 1036, 1043 (9th Cir.2005). In considering a defendant's motion to dismiss, the court must accept the allegations of the complaint as true. *Albright v. Oliver,* 510 U.S. 266, 267, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994); *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232; *Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th Cir.2005). The court also must construe the pleading in the light most favorable to the party opposing the motion to dismiss and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969); *Berg v. Popham,* 412 F.3d 1122, 1125 (9th Cir.2005). Moreover, pro se pleadings are held to a less stringent standard than those drafted by a lawyer. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam); *Jackson v. Carey,* 353 F.3d 750, 757 (9th Cir.2003).

**A. First Cause of Action:**

Plaintiff's first cause of action attempts to state a claim against LAPD defendants for violating RICO based on the facts that defendants Chapman and Fukui stopped plaintiff's vehicle, issued plaintiff a ticket, and impounded plaintiff's vehicle. Complaint, ¶¶ 16–18, 24. However, for the reasons discussed below, plaintiff has not, and cannot, state a cognizable RICO claim against LAPD defendants.

"To state a civil RICO claim, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or property.'" *Ove v. Gwinn,* 264 F.3d 817, 825 (9th Cir.2001); *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). "Racketeering activity" means "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical," acts indictable under specified federal statutes, and certain offenses involving fraud. 18 U.S.C. § 1961(1). For purposes of RICO, a "pattern of racketeering activity" requires at least two predicate acts of racketeering activity. 18 U.S.C. § 1961(5).

■ Initially, plaintiff's RICO claim against defendant City must be dismissed because "government entities are incapable of forming [the] malicious intent necessary to support a RICO action." *Pedrina v. Chun*, 97 F.3d 1296, 1300 (9th Cir.1996), *cert. denied*, 520 U.S. 1268, 117 S.Ct. 2441, 138 L.Ed.2d 201 (1997); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp.*, 940 F.2d 397, 404 (9th Cir.1991), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992). Similarly, plaintiff's RICO claims against the remaining LAPD defendants must be dismissed because, among other flaws, plaintiff has not, and cannot, allege a "pattern of racketeering activity"; rather, plaintiff can, at most, allege merely a single predicate act. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir.1992); *Medallion Television Enter. v. SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363–64 (9th Cir.1987), *cert. denied*, 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989); *Barrett v. City of Allentown*, 152 F.R.D. 50, 55 (E.D.Pa.1993). Further, the single predicate act of impounding plaintiff's vehicle cannot constitute "extortion" or any other racketeering activity since, as discussed below, defendants Chapman and Fukui had the legal authority to impound plaintiff's vehicle because plaintiff was driving with a suspended license. *See*, e.g., 18 U.S.C. § 1951(b)(2) (" '[E]xtortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."). Therefore, plaintiff's first cause of action fails to state a claim upon which relief can be granted, and must be dismissed.

**B.   Second Cause of Action:**

■ Plaintiff's second cause of action attempts to state two distinct Fourth Amendment claims against LAPD defendants and Viertel defendants: (1) a claim that plaintiff's vehicle was stopped as a result of a City policy of racial profiling; and (2) a claim that plaintiff's vehicle was impounded as a result of a City policy of racial discrimination against black males, such as plaintiff. Complaint, ¶¶ 16–18, 25. However, for the reasons discussed below, plaintiff has not, and cannot, state a cognizable Fourth Amendment claim against either LAPD defendants or Viertel defendants.

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002); *United States v. Willis*, 431 F.3d 709, 714 (9th Cir.2005). "It is well settled law that if a police officer pulls over a motorist without reasonable suspicion to do so, that action violates the Fourth Amendment." *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 947 (9th Cir.2003); *Price v. Kramer*, 200 F.3d 1237, 1248 (9th Cir.), *cert. denied*, 531 U.S. 816, 121 S.Ct. 54, 148 L.Ed.2d 22 (2000). However, for Fourth Amendment purposes, the reasonableness of a traffic stop does not depend on the subjective motivations of the individual officers involved. *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996); *see also Willis*, 431 F.3d at 715 ("*Whren* stands for the proposition that if the officers have probable cause to believe that a traffic violation occurred, the officers may conduct a traffic stop even if the stop serves some other purpose."). Rather, "the decision to stop an automobile is reasonable where police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810, 116 S.Ct. at 1772; *United States v. Wallace*, 213 F.3d 1216, 1219 (9th Cir.), *cert. denied*, 531 U.S. 974, 121 S.Ct. 418, 148 L.Ed.2d 323 (2000).

Here, plaintiff's vehicle was stopped because it did not have a front license plate, in violation of Veh. C. § 5200, and the lack of the license plate constitutes probable cause, making the traffic stop reasonable. *Whren*, 517 U.S. at 813, 116 S.Ct. at 1774; *Willis*, 431 F.3d at 715–17. Once defendants Chapman and Fukui discovered plaintiff was driving with a suspended license, they were authorized under California law to impound plaintiff's vehicle, without violating the Fourth Amendment.[5] *See*, e.g., *South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000 (1976) ("The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge."); *Mohammed El v. Opdyke*, 2004 WL 1465692, *3 (N.D.Cal.2004) (police officer did not violate plaintiff's constitutional rights by impounding plaintiff's vehicle, as authorized under California law, when plaintiff was operating vehicle without valid driver's license).

Further, the plaintiff's attempt to raise a Fourth Amendment claim against defendant City under *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), or against defendants Bratton or Rubert, as supervisors of defendants Chapman and Fukui,[6] also fails because plaintiff cannot state a cognizable Fourth Amendment claim against any individual defendant. *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986) (per curiam); *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir.1994), *cert. denied*, 515 U.S. 1159, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995).

Therefore, plaintiff's second cause of action fails to state a claim upon which relief can be granted, and must be dismissed.

## C. Third and Eighth Causes of Action:

### 1. DMV defendants

■ Plaintiff's third cause of action attempts to state a claim against DMV defendants for violating plaintiff's constitutional rights, and plaintiff's eighth cause of action seeks injunctive relief against DMV defendants to remove plaintiff's "wrong" address from defendant DMV's files. Complaint at 11:20–13:16. However, the Eleventh Amendment precludes plaintiff from stating a claim against DMV defendants, as discussed below.

The Eleventh Amendment prohibits suits against a state or its agencies or departments for legal or equitable relief. *Papasan v. Allain*, 478 U.S. 265, 276–77, 106 S.Ct. 2932, 2939–40, 92 L.Ed.2d 209 (1986); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). Specifically, the Eleventh Amendment bars civil rights actions, such as this, by a citizen against a state or its agencies unless the state has waived its immunity or Congress has overridden that immunity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309–10, 105 L.Ed.2d 45 (1989); *Stivers v. Pierce*, 71 F.3d 732, 749 (9th Cir.1995). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under [42 U.S.C.] § 1983 in federal court, and the Supreme Court has

---

**5.** *See* Veh. C. § 14602.6(a) ("Whenever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended or revoked, ... the peace officer may ... immediately arrest that person and cause the removal and seizure of that vehicle....").

**6.** Plaintiff merely alleges defendants Bratton and Rubert were "responsible for the conduct, training and discipline" of defendants Chapman and Fukui. *See* Complaint, ¶¶ 4–7.

held that ' § 1983 was not intended to abrogate a State's Eleventh Amendment immunity[.]' " *Dittman v. State of California,* 191 F.3d 1020, 1025–26 (9th Cir.1999) (citations omitted), *cert. denied,* 530 U.S. 1261, 120 S.Ct. 2717, 147 L.Ed.2d 982 (2000). Thus, the Eleventh Amendment bars plaintiff's third cause of action against defendant DMV, a state agency. *Id.* at 1026; *Sykes v. State of California (Dep't of Motor Vehicles),* 497 F.2d 197, 201 (9th Cir.1974).

■ Similarly, a suit against a public employee in her official capacity is equivalent to a claim against her employer. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Butler v. Elle,* 281 F.3d 1014, 1023 n. 8 (9th Cir.2002). However, the Eleventh Amendment "does not preclude a suit against [a] state officer[ ] for prospective relief from an ongoing violation of federal law." *Children's Hospital and Health Ctr. v. Belshe,* 188 F.3d 1090, 1095 (9th Cir. 1999), *cert. denied,* 530 U.S. 1204, 120 S.Ct. 2197, 147 L.Ed.2d 233 (2000); *Ex Parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908). Nevertheless, plaintiff has not, and cannot, allege the requisite "irreparable injury" necessary to support a request for injunctive relief. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983) (holding "equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again ... . The speculative nature of [plaintiff's] claim of future injury requires a finding that this prerequisite has not been fulfilled."); *Hodgers–Durgin v. de la Vina,* 199 F.3d 1037, 1042 (9th Cir.1999) (en banc) ("[A]bsent a threat of immediate and irreparable harm, the federal courts should not enjoin a state to conduct its business in a particular way."). Rather, plaintiff seeks injunctive relief solely to remove an allegedly "wrong" address from his DMV records.[7] Complaint at 13:8–16. Therefore, *Ex Parte Young* is of no benefit to plaintiff, and plaintiff cannot maintain a civil rights claim against defendant Lucas in her official capacity. *Butler,* 281 F.3d at 1023 n. 8.

■ In addition to plaintiff's constitutional claims, plaintiff claims DMV defendants violated the Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. §§ 2721–2725, when they allegedly accessed information in a police traffic collision report to obtain plaintiff's "wrong" address for mailing to him the notice suspending his driver's license. *See* Complaint, ¶ 19, Exhs. K, M. This claim is patently frivolous. First, DDPA "prevents private actions against states ... ." *Travis v. Reno,* 163 F.3d 1000, 1006–07 (7th Cir. 1998), *cert. denied,* 528 U.S. 1114, 120 S.Ct. 931, 145 L.Ed.2d 810 (2000). Second, DPPA specifically allows a government agency, such as defendant DMV, to access and use personal information "in carrying out its functions." 18 U.S.C. § 2721(b)(1); *see also* 18 U.S.C. § 2721(b)(4) (allowing use of personal information "in connection

---

**7.** Plaintiff has not bothered to explain why he cannot get the relief he seeks—that DMV's record contain his "proper" address—simply by filing a "Notice of Change of Address Form" (available on the DMV's website—*(http://www.dmv.ca.gov/forms/dmv/dmv14.pdf)*) with the DMV, as he is required by law to do. *See* Veh. C. § 14600(a) ("Whenever any person after applying for or receiving a driver's license moves to a new residence, or acquires a new mailing address different from the address shown in the application or in the license as issued, he or she shall within 10 days thereafter notify the department of both the old and new address. The department may issue a document to accompany the driver's license reflecting the new address of the holder of the license.").

with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process . . . ."). Thus, plaintiff has not, and cannot, state a constitutional violation claim against defendant DMV or defendant Lucas in her official capacity.

**2. Defendant Lucas in her individual capacity**

Plaintiff's third cause of action also attempts to state a constitutional claim for violating due process against defendant Lucas in her individual capacity, for denying plaintiff due process of law by mailing the notice advising him of the suspension of his driver's license to a "wrong" address obtained from an LAPD accident report. Complaint, ¶ 19, Exhs. K, M. However, plaintiff has not, and cannot, state a due process violation claim against defendant Lucas in her individual capacity, as discussed below.

█ "It is clear that the Due Process Clause applies to the deprivation of a driver's license by the State[,]" *Dixon v. Love,* 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172 (1977); *Mackey v. Montrym,* 443 U.S. 1, 10, n. 7, 99 S.Ct. 2612, 2617 n. 7, 61 L.Ed.2d 321 (1979), and "the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.'" *Dixon,* 431 U.S. at 112, 97 S.Ct. at 1727 (quoting *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971)). " 'The fundamental requisite of due process of law is the opportunity to be heard[,]" ' *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 339 U.S. 306 (1950) (citation omitted); *Ford v. Wainwright,* 477 U.S. 399, 413, 106

S.Ct. 2595, 2603, 91 L.Ed.2d 335 (1986), which " 'has little reality or worth unless one is informed' that a decision is contemplated." *Burns v. United States,* 501 U.S. 129, 136, 111 S.Ct. 2182, 2186, 115 L.Ed.2d 123 (1991) (quoting *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657). For this reason, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657; *Tulsa Prof'l Collection Servs., Inc. v. Pope,* 485 U.S. 478, 484, 108 S.Ct. 1340, 1344, 99 L.Ed.2d 565 (1988). To satisfy this notice requirement, California law requires DMV to provide first-class mail notice to an individual when a driver's license is suspended. Veh. C. § 13106(a).

Here, plaintiff alleges defendant DMV mailed his driver's license suspension notice to the "wrong" address, which was taken from an LAPD accident report dated February 8, 2003.[8] However, under California law, DMV is permitted to update its records to reflect an individual's new address as reported by a law enforcement agency, such as LAPD. *See, e.g.,* Veh. C. § 13106(a) ("It shall be a rebuttable presumption, affecting the burden of proof, that a person has knowledge of the suspension or revocation if notice has been sent by first-class mail by the [DMV] pursuant to this section to the most recent address reported to the department pursuant to Section 12800 [driver's license application] or 14600 [requiring persons to notify DMV of change of address within 10 days], or any more recent address on file *if*

8. The plaintiff does not allege, however, that he never got the notice suspending his driver's license.

*reported by the person, a court, or a law enforcement agency,* and the notice has not been returned to the department as undeliverable or unclaimed." (emphasis added)). Thus, DMV employee defendant Lucas complied with California law when she mailed notice of the suspension of plaintiff's driver's license to plaintiff's address listed on an LAPD accident report, and there was no due process violation. *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657; cf. *Madewell v. Downs,* 68 F.3d 1030, 1047 (8th Cir.1995) ("Any confusion about [plaintiff's] actual residence was the result of [plaintiff's] own conduct, not the result of a willful failure to send notice to an address the [agency] knew or should have known."). Accordingly, plaintiff has not, and cannot, state a due process violation claim against defendant Lucas in her individual capacity.

## V

Plaintiff attempts in his fourth, fifth, sixth and seventh causes of action to set forth state law claims for "harassment," conversion, unjust enrichment and gross negligence against various defendants. However, having dismissed plaintiff's federal claims, this Court declines to retain jurisdiction over plaintiff's supplemental state law claims because no federal cause of action remains. 28 U.S.C. § 1367(c); *Brown v. Lucky Stores, Inc.,* 246 F.3d 1182, 1189 (9th Cir.2001); *Voigt v. Savell,* 70 F.3d 1552, 1565 (9th Cir.1995), *cert. denied,* 517 U.S. 1209, 116 S.Ct. 1826, 134 L.Ed.2d 931 (1996).[9]

9. It has come to this Court's attention that plaintiff previously filed an action in the Los Angeles County Superior Court regarding at least some of the events underlying this action, and that the matter is currently on appeal in the California Court of Appeal. *Banks v. Los Angeles Police Dept.,* case no.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order (1) approving and adopting the Report and Recommendation; (2) finding that the first, second, third and eighth causes of action do not state a claim upon which relief can be granted, and entering Judgment dismissing those claims with prejudice; and (3) finding that the fourth, fifth, sixth and seventh causes of action are state law claims over which the Court declines to retain jurisdiction, and entering Judgment dismissing those claims without prejudice.

Jan. 19, 2006.

B178562. Since this Court has determined that this action must otherwise be dismissed, and because neither party provided the Court with the pleadings and relevant orders in the pending state court action, this Court does not address any possible effect the state court action might have on this matter.